# State of Vermont v. James W. Polidor

[285 A.2d 770]

No. 157-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*Frank G. Mahady*, State's Attorney, and *Paul F. Hudson*, Deputy State's Attorney, for the State.

*John A. Burgess*, Montpelier, for Defendant.

**Smith, J.** Following a fire of incendiary origin which occurred at the Vermont State Prison, at Windsor, Vermont, the defendant, then incarcerated therein, was served with an information and warrant issued by the State's Attorney of Windsor County. The charge in such information and warrant was that the defendant "on to wit the 3rd day of July, 1969, did then and there, wilfully and maliciously set fire to, burn and cause to be burned, a shop, to wit, the Laundry Building at the Vermont State Prison in violation of 13 V.S.A. § 502." On October 14 and 15, 1970, the defendant was tried by jury on the charge of first degree arson and found guilty. It is from this judgment on the verdict that he has taken his appeal to this Court.

The first claim of error advanced by the defendant is that the information and warrant, as quoted above, was defective and such defect materially prejudiced the defendant. The statute under which the defendant was charged, 13 V.S.A. § 502, reads in part as follows:

> "A person who wilfully and maliciously sets fire to or burns or causes to be burned, or who wilfully and maliciously aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging, or adjoining thereto, whether the property of himself or another, shall be guilty of arson in the first degree."

It is the contention of the defendant that the State, at most, only sought to prove that the defendant had acted in a manner to be construed as an aider before the fact in the commission of the felony, and that the State was, thus, under an obligation to file a conjunctive information as to all the disjunctive acts enumerated in 13 V.S.A. § 502.

We can agree with the defendant that the statute, above quoted, denounces as an offense two or more separate and

distinct acts, enumerated in the disjunctive. As was held in *State* v. *Ciocca*, 125 Vt. 64, 72, 209 A.2d 507 (1965):

> "It is not uncommon for a statute to denounce as an offense two or more separate and distinct acts, things, or transactions enumerated therein in the disjunctive, and it appears to be the general rule that in such case the whole may be charged conjunctively and a respondent found guilty of either one."

Under this interpretation of the law our only duty is to ascertain if the information and warrant, under which the defendant was charged, charged the defendant with the various offenses mentioned in the statute conjunctively. A reading of the information and warrant disclosed that the defendant was charged with setting fire to "burn and cause to be burned" the shop that was the subject of the fire. The use of the word "and" demonstrates that the information and warrant was worded in the conjunctive and was in compliance with the law as laid down in *State* v. *Ciocca, supra.*

It is true that the evidence of the State failed to indicate that the defendant actually set the fire that took place in the prison. However, evidence was introduced by the State that the defendant did participate in the planning of the illegal act, and that he furthered the act by supplying flammable material, as well as rendering useless the sprinkling system maintained in the burned building which would well have stopped the fire.

> "Where several persons combine under a common understanding and with a common purpose to do an illegal act, each one is criminally responsible for the act of each and all who participate with him in the execution of the unlawful design." *State* v. *Orlandi*, 106 Vt. 165, 171, 170 A. 908 (1934).

13 V.S.A. § 4 states:

> "A person who is accessory before the fact by counseling, hiring or otherwise procuring an offense to be committed may be complained of, informed against, or indicted, tried, convicted and punished as if he were a

principal offender and in the court and county where the principal might be prosecuted."

The defendant takes nothing by his first claim of error.

The second claim of error advanced by the defendant is that the lower court erred in admitting the testimony of one Robert Atkinson, and that such admission prejudiced the case of the defendant.

Atkinson, who had been an inmate of the State Prison at the time of the fire, testified that he talked with the defendant in the prison laundry, shortly before the start of the fire. The defendant was working on a piece of metal in an effort to make a picklock. The witness assisted the defendant in constructing such a picklock. After the picklock was completed, the defendant asked the witness to open the lock on the sprinkler system. As the witness left Polidor he saw him working with the picklock on the sprinkler system. After the fire, the witness testified that the defendant said to him that the fire "should wind Smitty's clock." The reference apparently being to the prison warden, Robert Smith.

The contention of the defendant is that under 13 V.S.A. § 2907 the testimony of Atkinson could not be received by the court.

> "13 V.S.A. § 2907. The oath of a person convicted of perjury, subornation of perjury, or an endeavor to incite to procure another person to commit perjury, shall not be received in a proceeding in court, except as an affidavit in his own cause, or as a poor debtor, unless the judgment given against such person is reversed, or he is pardoned."

The defendant introduced into evidence a certified copy of judgment of the United States District Court for the District of Vermont in which Atkinson entered a plea of guilty to the charge of conspiracy to commit perjury. The objection raised by the defendant to the admission of testimony by Atkinson was denied by the court below and he was permitted to testify.

Vermont statutes impose punishments for: (1) perjury, (2) subornation of perjury, (3) attempt to suborn, defined as

"A person who corruptly endeavors to incite or procure a person to commit the crime of perjury, although no perjury is committed" and (4) false swearing. 13 V.S.A. §§ 2901, 2902, 2903, 2904.

█ It is argued by the State that the admitted plea of guilty by Atkinson in the federal court to the charge of conspiracy to commit perjury does not bring him under the prohibition of 13 V.S.A. § 2907, for the reason that he was not convicted of a crime under the perjury statutes, cited above. It is the contention of the State that to hold that Atkinson was found guilty of perjury, under the Vermont Statutes Annotated, thus disqualifying him as a witness, would violate the rule that statutes in derogation of the common law are to be strictly construed. *Coral Gables, Inc.* v. *Christopher,* 108 Vt. 414, 418, 189 A. 147 (1937).

The two sections of the statutes, 12 V.S.A. § 1608 and 13 V.S.A. § 2907 do not disqualify for the crime of conspiracy. The trend of the law has been toward removal of disqualification. 2 J. Wigmore, Evidence §§ 521–24 (3d ed. 1949).

"According to the weight of authority, a person who is offered as a witness is not rendered incompetent by reason of the fact that he has been convicted of crime in another state. Similarly, a conviction in a federal court does not disqualify one as a witness in the courts of the state in which the federal Court was sitting, or vice versa." 58 Am. Jur. *Witnesses* § 142, *Logan* v. *United States,* 144 U.S. 263, 36 L.Ed. 429, 443 (1892); *Burdine* v. *Kennon,* 186 Tenn. 200, 209 S.W.2d 9, 2 A.L.R.2d 577 (1948); Annot., 2 A.L.R.2d 579 (1948).

The conviction in federal court was admitted by the witness before the jury and it was a factor they could consider in weighing the evidence produced by his testimony. No error is found.

█ The next exception briefed by the defendant is claimed error in denying a motion for a mistrial when it was called to the attention of the court that prejudicial circumstances might exist.

This motion was based upon the fact that the defendant was brought to the courthouse for trial, shackled, and with a large chain about his waist. It is the contention of the defendant that he was exposed to possible members of the jury, before trial, while so confined, and that such exposure was highly prejudicial. The defendant was not so confined during the progress of the trial.

The record before this Court shows that the defendant was under sentence at the State Prison at the time of this trial, that he was also being held for safekeeping at the time of trial, and that he had recently been an escapee from the Vermont State Hospital, which could well account for the restrictions placed upon his person. The ruling of the trial court on granting the motion for a mistrial was a discretionary one.

> "Any discretionary ruling is not subject to revision here unless it clearly and affirmatively appears that such discretion has been abused or withheld." *State* v. *Goyet*, 120 Vt. 12, 19, 132 A.2d 623 (1957).

The burden of showing prejudicial error was upon the defendant.

> ". . . (T)hat the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." *State* v. *Truman*, 124 Vt. 285, 290, 204 A.2d 93 (1964).

The defendant has failed to show in the record any indications that the bringing of the defendant so shackled, to the courthouse, had a prejudicial effect upon the jury. The discretion of the court was properly exercised and the motion for a mistrial was properly denied.

The next contention of the defendant is that the trial court committed reversible error in denying him the right to appear *pro se*. The record before us clearly shows that the defendant made a written request for the assignment of counsel as an indigent respondent on January 16, 1970, and that the lower court appointed Harry A. Black, a respected member of this bar, as such counsel. It was not until May 5,

1970, that the defendant asked the court to discharge Mr. Black and allow him to act *pro se* in the proceedings. While defendant urged that Mr. Black could not properly represent him because of a conflict of interest problem, this was not found to be the fact.

The lower court found that the seriousness of the charge with which the defendant was faced required the defendant to have the assistance of counsel, and that to allow the discharge of the attorney, whose aid he had requested, might well prejudice the defendant as well as delaying unnecessarily the trial of the cause.

> "We recognize that a respondent has a right to discharge his attorney and substitute other counsel at anytime during the course of the proceedings. However, this right is not so absolute that its exercise may not be denied where it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise would enable a respondent in a criminal proceeding to delay his trial until he had exhausted his capability of acquiring defense counsel, and harass and delay the effective prosecution of the crime." *State* v. *Truman,* 124 Vt. 285, 291, 204 A.2d 93 (1964).

> "Accused's right to represent himself is not so absolute that it must be recognized when to do so would disrupt the court's business and the right is subject to the duty of the court to protect the judicial process from deterioration occasioned by improper or inadequate conduct of the defense, and in such situation, the court possesses broad discretion to appoint counsel for advisory or other limited purposes or to supersede accused in the conduct of the defense." 23 C.J.S. *Criminal Law* § 979(4), at 929 and cases cited thereunder.

We hold that the lower court acted within its discretion, and in the best interests of both the defendant and the judicial process in denying the request of the defendant to proceed *pro se.*

■ The final briefed contention of the defendant is that the lower court erred in denying the motion of the defendant to reopen the case to offer direct rebuttal evidence. Both sides

had rested late in the day preceding the motion, and it was made just prior to the time when the court was to instruct the jury, on the next day. The evidence the defendant wished to introduce was for the purpose of impeaching one of his own witnesses and not a witness for the State. This was inadmissible. *In re Campbell's Will,* 100 Vt. 395, 400, 138 A. 725 (1927).

This evidence was not offered in reply to the rebutting evidence of the State. Our rule is that in a criminal action, the order of proof is in the discretionary control of the trial court. *State* v. *Miner,* 128 Vt. 55, 258 A.2d 815, 822 (1969). Under the circumstances disclosed here we find no abuse of discretion on the part of the trial court.

*Judgment affirmed.*