### State of Vermont v. Craig Allen Canerdy

[315 A.2d 237]

No. 33-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Robert W. Gagnon,* State's Attorney, and *Jean B. Baldwin,* Deputy State's Attorney, for the State.

*Uris & Hutton,* Waitsfield, for Defendant.

Shangraw, C.J. The defendant was convicted by a jury of operating an automobile while under the influence of intoxicating liquor on Route 17 in the town of Fayston, Vermont, on March 5, 1972.

At the close of the State's evidence defendant moved for a directed verdict in his favor and for a dismissal of the case. This motion was denied. Following the jury's verdict of guilty, the defendant further moved to set aside the verdict and for judgment in his favor notwithstanding the verdict. This motion was also denied. The court entered judgment on the verdict and imposed sentence. It is from this judgment that the defendant has appealed to this Court for review.

In essence, the defendant challenges his conviction on three grounds: (1) it was error for the trial court to allow the arresting officer to testify that he accused the defendant of lying at the scene of the accident, (2) that the time of the accident was not proven and that the State failed to sufficiently prove that defendant was under the influence of intoxicating liquor at the time of the accident, and (3) that the chain of custody of defendant's breath sample was not adequately proven.

The State called two witnesses, Harold M. Goralski of the Vermont State Police, and Dr. Lawrence S. Harris. Dr. Harris is a full time faculty member of the University of Vermont, and has a part time contract with the State of Vermont as chief medical examiner. In the latter capacity he analyzes certain samples taken in connection with alcohol incidents.

Viewed in the light most favorable to the State, the evidence revealed the following factual situation. Trooper Goralski was dispatched to the scene of an accident in Fayston at about 12:30 a.m. and arrived there around 12:50 a.m. He observed the defendant and another person standing near defendant's automobile which had been moved off the road.

The trooper testified that it was snowing lightly that night. There were a lot of tire tracks made by passing vehicles by the time he had completed his investigation. When he first arrived, the tracks traceable to defendant's automobile were visible and "plain as day." These tracks came around a curve in the road and for seventeen feet were in the left-hand lane, then went back over to the extreme right six inches off the blacktop and went straight for two hundred feet into a concrete bridge. Mr. Goralski testified that the bridge was visible to anyone using that highway, even at night.

Defendant stated to the trooper that someone "ran him off the road" but was unable to furnish him a description of the vehicle. In response to the defendant's statement as to the cause of the accident, the trooper testified that he then stated to the defendant, "You are lying." Objection was made by counsel for the defendant to this evidence claiming that "It is not evidence of his guilt" and moved for a mistrial. The state claimed that the trooper was merely testifying as to what happened. The comment made by the trooper to the defendant was based upon the visual tire marks in the road. At this point in the trial and in the presence of the jury, the trial court remarked: "I don't think it should be considered as evidence of his guilt. It is a factual situation that occurred. We will leave it to the jury. He is saying what was said. It is admissible for whatever it is worth." The motion for a mistrial was denied. ·

Trooper Goralski testified that defendant's eyes were glassy, the pupils of his eyes dilated, and that there was an odor of alcoholic beverage on his breath. The trooper also testified that in his opinion defendant was under the influence of intoxicating beverage. Trooper Goralski administered the breath test to the defendant on the crimper machine, collected the sample, and sent the test to the laboratory in Burlington, Vermont, for analysis.

Dr. Harris testified that on March 8, 1972, he received a mailing package containing a metal tube of the kind produced by a crimper device. He stated that the package had "Goralski" written in the space provided for the return address. It was sent by the State Police and bore a label indicating it had been taken from someone named Craig Canerdy. The tube showed no signs of defect. Dr. Harris personally tested the breath sample on a Chromatograph unit which revealed a blood alcohol content of 0.15 grams per cent.

Dr. Harris further testified that at a 0.15 per cent blood alcohol level a person would be under the influence. This would be manifested by muscular incoordination, inability to appreciate one's position in space and time, inability fully to sense acceleration and deceleration, slow reaction time, inappropriateness of response to external stimuli, and inability to touch the brake promptly. This would also affect one's sense of position in a car on the highway.

■ We first consider the police officer's statement,—"You are lying." Defendant claims that this statement, received in evidence over his objection, was self-serving and invaded the province of the jury in determining the defendant's credibility. The defendant neither took the stand nor called any witness. Following receipt of the foregoing statement in evidence, the court, as hereinbefore appears in this opinion, cautioned the jury that such statement should not be considered as evidence of defendant's guilt, only admissible for whatever it is worth, and that the factual situation is left to the jury.

It is to be noted that the trooper testified as to the movement of defendant's automobile prior to its contact with the bridge, all as bearing on the issue as to whether Mr. Canerdy was under the influence of intoxicating liquor at the time and place of the accident. Trooper Goralski was told by the defendant that he was forced off the road by an oncoming car.

Having in mind the physical evidence of the course taken by defendant's automobile, as against defendant's claim that he was forced off the highway, the trooper's conclusion or opinion that the defendant was untruthful was merely his judgment that defendant's statement of the circumstances surrounding the accident was inconsistent with the physical evidence. A determination of the factual situation was properly left to the jury. We are not persuaded that the receipt of this evidence would warrant a new trial.

Defendant secondly claims that the required burden of proof of showing that he was under the influence of intoxicating liquor at the time of the accident was not met. He asserts that the State's evidence was so meager as to fall within the prohibition of State v. Clark, 130 Vt. 500, 296 A.2d 475 (1972).

In the Clark case, supra, the defendant was found standing next to his overturned truck and in a highly intoxicated condition. However, the State was unable to establish any time frame whatsoever for the purpose of relating the accident to the intoxicated defendant. This Court upheld the trial court's direction of a verdict in favor of the defendant for that reason.

■ In commenting on the evidence presented in the Clark case, supra, this Court stated: "Entirely lacking in the

presentation of the State was any evidence, direct or circumstantial, of the time when the defendant had the accident." Such is not the case here. In view of the testimony of Goralski hereinbefore referred to, the path taken by defendant's automobile was a circumstance well within the province of the jury to consider as bearing upon the condition of the defendant at the time of the accident.

Intoxication may be evidenced circumstantially by prior or subsequent condition within such time that the condition may be supposed to be continuous. 2 J. Wigmore, Evidence § 235 (3d ed. 1940). This accords with our rule that an inference may be and often is retroactive; a trier may from present conditions infer a previous fact. *Ackerman* v. *Kogut*, 117 Vt. 40, 44, 84 A.2d 131 (1951).

Considering the relatively short time within which trooper Goralski appeared at the scene after the accident, the path taken and circumstances surrounding the operation of defendant's automobile, the testimony of Dr. Harris relating to the handicaps and inadequacies of control of an automobile by a person under the influence of intoxicating liquor, and the fact that the breath test revealed a 0.15 per cent alcoholic content, all in all there appears an adequate basis for the finding by the jury that the defendant's intoxicated condition related back to his operation of the car at the time of the accident.

Lastly, the defendant complains that the method of taking the sample of breath and the chain of custody of the sample was not sufficiently established to have justified the result of the test by Dr. Harris to have been received in evidence.

The crimper test, a breath test, was given to the defendant by Trooper Goralski. It was administered according to an instruction card. Goralski testified that it was a simple procedure to administer this test. He also testified that he was trained in giving such a test and had done so on a number of occasions. The sample was collected by this witness and sent to the laboratory in Burlington, Vermont.

Dr. Harris testified that a breath sample is more nearly a reflection of what is going on in the body than a veinous blood sample. Also, that the breath sampling method is directly re-

lated to the capillary blood level in the lungs and has been standardized. Both the trooper and Dr. Harris were cross-examined at length concerning the taking, custody, and final testing of the breath sample.

The identification and authentication of the sample is a factual issue, so long as enough is shown to allow a trial court to rule favorably on its relevance, and also on its admissibility as against any possible prejudice to the defendant. *State* v. *Auger*, 124 Vt. 50, 57, 196 A.2d 562 (1963). The ultimate question remains whether on all the evidence it could be found that the breath sample analyzed by Dr. Harris was that of the defendant. See *State* v. *Fornier*, 103 N.H. 152, 167 A.2d 56, 57 (1961), cited at page 57 in the *Auger* case, *supra*. The jury's verdict reflects an affirmative answer to this question.

■ The lower court properly ruled that the result of the test made by Dr. Harris was admissible in evidence. A questioned ruling will be affirmed if it can be supported on any legal ground. *State* v. *Auger, supra,* 124 Vt. at 54; *State* v. *Rowell,* 120 Vt. 166, 170, 136 A.2d 349 (1957).

■ The motion to set aside the verdict and for judgment in defendant's favor, notwithstanding the verdict was also properly denied. In our consideration of such a motion the test laid down is whether the State introduced evidence fairly and reasonably tending to show defendant's guilt, or in other words, whether the jury on the evidence would have been justified in finding the defendant guilty beyond a reasonable doubt. *State* v. *Ballou,* 127 Vt. 1, 3, 238 A.2d 658 (1968). We cannot say that the jury went astray. The conviction must stand.

*Judgment affirmed.*