## State of Vermont v. Virginia R. Carter

[458 A.2d 1112]

No. 268-81

Present: Billings, Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed March 28, 1983

*John J. Easton, Jr.*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Gordon Gebauer*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Plante, Richards, Terino & Hanley* and *C. Nicholas Burke*, Law Clerk (On the Brief), White River Junction, for Defendant-Appellant.

**Hill, J.** Defendant was convicted after a trial by jury of driving while under the influence of intoxicating liquor (DUI)

in violation of 23 V.S.A. § 1201(a)(2), and subsequently filed a timely notice of appeal. We affirm.

At approximately 11:15 p.m. on October 21, 1980, defendant and a companion left the scene of an all day strike protest at the Waterbury Plastics Plant in defendant's van. While the two were driving towards the village of Randolph, Vermont, a police officer patrolling in the vicinity noticed that the taillights on defendant's van were not working. The officer stopped the van, and after conversing with defendant for a short while, detected a strong odor of alcohol on her breath. The officer testified at trial that, when asked if she had been drinking, defendant responded that she had consumed five or six beers. In addition, the officer testified that defendant displayed poor coordination while attempting to perform several dexterity tests, and that her gait was unsteady. The first officer's testimony was buttressed by the testimony of a second officer, who had occasion to observe defendant shortly thereafter at the Randolph police station. His testimony was that defendant's eyes were watery and bloodshot, and that her speech was slurred. Based upon the above observations, and despite defendant and her companion's contentions to the contrary, the first officer formed the opinion that defendant had been driving while under the influence of intoxicating liquor, and requested her presence at the Randolph police station for DUI processing.

At the station, defendant submitted to a breath test to measure the percent of alcohol by weight in her blood. The results of the test, which was administered approximately forty-five minutes after the initial stop, indicated a .21 percent blood-alcohol concentration at the time of testing. At trial, since the State made no attempt to relate back the test results to the time of the initial stop, defendant objected to their admission into evidence. The trial court ruled, on the basis of our recent decision in *State* v. *Dacey*, 138 Vt. 491, 418 A.2d 856 (1980), that the test results were admissible to corroborate the above noted testimony of the police officer, but that in the absence of expert testimony relating said results back to the initial stop, the State could not avail itself of the permissive inference instruction embodied in 23 V.S.A. § 1204(a)(3).

On appeal, defendant has briefed two exceptions for our consideration, the first of which is whether the trial court erred

when it admitted into evidence defendant's breath test results for the purpose of corroborating the testimony of the two officers. Defendant insists that the State had an affirmative obligation to relate back the test results to the time of the initial stop and, in the absence of such evidence, the test results were inadmissible. The essence of her argument is that the relationship between a person's blood-alcohol concentration and her degree of impairment, if any, is a matter beyond the ordinary experience and knowledge of the average lay person. Thus, she contends that in the absence of expert testimony explaining the significance of the .21 percent alcohol concentration, the jury was left to speculate as to the importance of the .21 test result. By permitting such speculation, defendant concludes that she was irreparably prejudiced. We disagree.

In *State* v. *Dacey, supra,* a case involving a DUI conviction in violation of § 1201(a)(2), we held that a prosecution under 23 V.S.A. § 1204(a)(3) *"permits but does not compel a jury finding that defendant was under the influence of intoxicating liquor while operating a motor vehicle upon proof of .10% or more blood-alcohol content by weight at the time of operation." Id.* at 496, 418 A.2d at 859 (emphasis in original). In order to take advantage of this inference, however, the State must produce "expert testimony relating the blood-alcohol test results back to the time of operation." *Id.* at 497, 418 A.2d at 859. Claiming that this holding stood for the proposition that all blood-alcohol test results were inadmissible absent expert testimony relating back the results to the time of operation, a claim now raised again by defendant, the State in *Dacey* filed a motion for reargument. We specifically denied that motion, and unanimously held, without elaboration, that "[i]t [was] obvious that we [had] not ruled blood-alcohol test results inadmissible *if otherwise relevant." Id.* (emphasis added).

The relevancy of evidence hinges on whether it has some probative value; that is, whether "it tends to make the existence of the fact at issue more or less probable." *State* v. *Rollins,* 141 Vt. 105, 110, 444 A.2d 884, 887 (1982) (citing *State* v. *Patnaude,* 140 Vt. 361, 370, 438 A.2d 402, 405 (1981)). If found to be relevant, the evidence may still be inadmissible "if its probative value is outweighed by the danger of unfair

prejudice." *State* v. *Picknell,* 142 Vt. 215, 230, 454 A.2d 711, 718 (1982) (citing *State* v. *Bevins,* 140 Vt. 415, 419, 439 A.2d 271, 272 (1981)). The decision to admit relevant but prejudicial evidence rests within the trial court's discretion. Discretionary decisions are not " 'subject to revision here unless it clearly and affirmatively appears that such discretion has been abused or withheld.' " *State* v. *Polidor,* 130 Vt. 34, 39, 285 A.2d 770, 773 (1971) (quoting *State* v. *Goyet,* 120 Vt. 12, 19, 132 A.2d 623, 630 (1957)).

In the present case, defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor. The State produced scientific evidence indicating traces of alcohol in defendant's blood forty-five minutes after her initial stop. Since she had not had anything to drink between the time of her initial stop and her subsequent DUI processing, the test results were unquestionably relevant to the State's case. Moreover, we fail to see how the State's decision not to relate back the test results to the time of operation resulted in prejudice to defendant. They were as relevant as personal observations at that time. Absent the relating back evidence, the test results simply established the fact that defendant had consumed some amount of intoxicating liquor before being stopped. Although the evidence corroborated the testimony of the two officers, the jury still had to determine whether the ultimate effect of such consumption was "a loss of full control over the faculties of mind and body." *State* v. *Carmody,* 140 Vt. 631, 638, 442 A.2d 1292, 1295 (1982).

█ █   Accordingly, the trial court properly exercised its discretion in admitting the test results, and we see no reason to modify our holding in *State v. Dacey, supra.* We wish to make clear, however, that nothing we have said today in any way affects our holding in *State* v. *Rollins, supra.* Thus, in a case involving a charge of operating a motor vehicle on a public highway while there is .10% or more by weight alcohol in an individual's blood, 23 V.S.A. § 1201(a)(1), such relating back evidence is "indispensible to the prosecution's case." *Id.* at 110, 444 A.2d at 887.

█   Finally, defendant asserts that the trial court's charge to the jury unfairly favored the State. When reviewing

a jury charge, "we are guided by the familiar rule that instructions to the jury may not be isolated into small segments and considered piecemeal, but must be measured by their full context." *State* v. *Girouard*, 135 Vt. 123, 139, 373 A.2d 836, 847 (1977) ; see also *State* v. *St. Amour*, 139 Vt. 99, 102, 422 A.2d 937, 939 (1980). "If the charge as a whole breathes the true spirit of the law, without misleading the jury, it ought to stand." *State* v. *Rathburn*, 140 Vt. 382, 387, 422 A.2d 452, 455 (1981) (citing *State* v. *Gokey*, 136 Vt. 33, 36, 383 A.2d 601, 602 (1978)).

We have carefully reviewed the trial court's charge in its entirety, and consider defendant's exception to be a piecemeal attack on a charge that "as a whole was full and fair to the defendant and to the State." *State* v. *Girouard, supra*, 135 Vt. at 140, 373 A.2d at 847. Since "[n]one of the objections raised by the defendant . . . demonstrates any error of law so prejudicial as to require reversal," *id.* (citing *State* v. *Oakes*, 129 Vt. 241, 259, 276 A.2d 18, 29 (1971)), the judgment of the trial court is affirmed.

*Affirmed.*

**Underwood, J.,** dissenting. I concede that the defendant's blood-alcohol test of 0.21% is relevant, but without first laying a proper foundation for its admission into evidence its propensity for prejudice far outweighs its probative value. It is well recognized that otherwise admissible evidence may become inadmissible where its probative value is overwhelmed by its improper prejudicial effect. *Quazzo* v. *Quazzo*, 136 Vt. 107, 110, 386 A.2d 638, 640 (1978). We recently stated in *State* v. *Bevins*, 140 Vt. 415, 419, 439 A.2d 271, 277 (1981) : "Even though relevant, evidence is still not admissible if its probative value is outweighed by such considerations as 'the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .' "

Here "the danger of unfair prejudice" or of "misleading the jury" is too real a threat to ignore. Even though the trial court admitted defendant's blood-alcohol test result for the limited purpose of corroborating the testimony of the police officer who stopped her, the real danger is that the jury may unwittingly overrun that limitation and as uninformed laypersons treat the blood-alcohol test result as substantive evidence

of the *factum probandum*. Thus, the State's burden of proving that the defendant was operating a motor vehicle while under the influence of intoxicating liquor will be subliminally eased.

When we weigh the slight probative value of this bit of evidence against the real possibility that some juror will draw an improper inference from the unexplained numbers, comprising the test results of a highly technical chemical analysis of the defendant's breath, the opportunity for prejudice to permeate the case is great. This is especially true in the light of the widespread media coverage of the subject.

In the case at bar the State called a chemist from the Department of Health to lay the preliminary foundation for the introduction into evidence of defendant's blood-alcohol test result. The chemist described how he used gas-chromatography to analyze the defendant's breath sample in order to determine the blood-alcohol content of his blood at the time the breath sample was taken by the police officer 45 minutes after the initial stop.

It is apparent from the record that the court qualified the chemist as an expert to testify *only* as to his ability to chemically analyze the percentage of alcohol by weight in a person's blood from a sample of his breath. He did just that in the defendant's case. He explained for the jury the process of collecting the breath sample in the crimper box, the accuracy of the procedure and the skill required to properly gather the sample. Then he submitted his laboratory analysis of the sample by the gas-chromatography process.

The chemist himself succinctly stated his role and the limits of his expertise: "My role is to analyze the incapsulated breath sample, and determine if alcohol is present, and if so how much." He was not qualified to explain the significance of defendant's 0.21% test or describe the physical or mental characteristics manifested by a person with a 0.21% test, nor was he qualified to give an expert opinion as to whether her ability to drive would be impaired with a 0.21% test.

Absent testimony by a fully qualified expert witness who could interpret for the jury the significance of a blood-alcohol test of 0.21%, the evidence should not have been admitted. The admission of the unexplained test result is an invitation to the

jury to speculate on its gravity. Compare *State* v. *Canerdy,* 132 Vt. 131, 315 A.2d 237 (1974); *State* v. *Levesque,* 132 Vt. 585, 326 A.2d 174 (1974).

For these reasons I would reverse and remand for a new trial.