## Marjorie L. Jones v. Ethel B. Jones Estate

[149 A2d 738]

January Term, 1959

Present: **Cleary, C. J., Adams, Hulburd, Holden and Shangraw, JJ.**

Opinion Filed March 4, 1959.

*O' Neill, Delany & Valente* for the defendant.

*Williams & Sullivan* for the plaintiff.

Cleary, C. J.   This is an appeal from an order of the Probate Court for the District of Fair Haven.  Ethel B. Jones died on April 18, 1955.   She had never married, but the plaintiff, Marjorie L. Jones, claims to be her daughter and sole heir. She claims Arthur J. Safford was her father.   The administratrix claims that the plaintiff is the daughter of Don R. Jones and his wife, Carrie Scribner Jones, now deceased.   The administratrix also claims that the only heirs of Ethel B. Jones are a sister, Ina P. Fales, a brother, Don R. Jones, and the daughter of another brother, Ralph Jones, who predeceased Ethel. Trial was by jury in the Rutland County Court and resulted in a verdict that the plaintiff, Marjorie L. Jones, is the daughter of Ethel B. Jones.   Judgment was entered for the plaintiff, and the case is here on the defendant's exceptions.

██ While the plaintiff was on the witness stand she identified a photograph, Pl's Ex. 7, as that of Arthur J. Safford's mother.   Subject to the defendant's objection and exception on the ground that it was irrelevant the photograph was received in evidence "to indicate the resemblance between the plaintiff and the members of A. J. Safford's family, particularly the maternal side."   The admissibility of Pl's Ex. 7 depended on whether it might affect the claimed parentage of the plaintiff which was the issue being tried.   *State* v. *Lapan*, 101 Vt 124, 134, 141 A 686; *Niebyski* v. *Welcome*, 93 Vt 418, 421, 108 A 341; *Fairchild* v. *North Eastern Mut. Life Ass'n.*, 51 Vt 613, 627-628.   The purpose for which Pl's Ex. 7 was offered and received was relevant to the issue being tried, so the exception is not sustained.   The defendant has briefed and argued various claims which are beyond the scope of the exception, but these claims are not for consideration here.   A claim made here for the first time is not for consideration.   *Petition of Stowell*, 119 Vt 298, 302, 125 A2d 807, and cases there cited.

During the trial the plaintiff offered the deposition of Mrs. Lillian C. Dryfuse, who had been the nurse and close friend of Arthur J. Safford for many years and until he died.   In 1932

Safford told her that when he was going to high school he had been intimate with Ethel Jones; that Ethel's father came to Safford's father's barn and accused Safford of being the father of a child that was to be born to Ethel Jones; that Safford's father used the horse whip on him, blackened both of his eyes and put him on a train to Hartford, Connecticut. In 1934, while at Safford's cottage at the north end of Lake St. Catherine in Poultney, Vermont, Safford pointed out an old well to Mrs. Dryfuse. He said he used to hide his canoe at the end of the lake. When Ethel would come to wash the milk pails it was usually dark and that is when he went over and met her at the well. "That is how it happened." "They were familiar with each other."

His father wrote him in Hartford that a child had been born, a girl. There had been no one present at the birth; that he had paid Grandpa Jones a sum of money and that he could come home. On the defendant's objection "This is entirely objectionable and hearsay" the court ruled: "We are going to strike all that part of the deposition relative to what the father of Safford said to him and the jury will disregard that part of the testimony, anything that this witness gave in the deposition that Mr. Safford said his father said to him."

The examination continued:

"Q. What do you mean there was no one present at the birth? Do you mean a doctor or what?

A. No, it was hushed up, that is what his father told him and that he could come home. He was working in a munitions plant and he didn't go directly home. When he did go home, his brother and many acquaintances and friends told him that the child had not died, that it was hidden somewhere in the Jones family. He was forbidden to go near the lake or to have any conversation with any Jones." Defendant's counsel then said: "We move that it be stricken out on the same ground it is what this witness says that Safford told her about what somebody else said which is the rankest kind of hearsay."

■ The rule of law, admitting hearsay evidence in cases of pedigree, rests upon the assumption that the declaration, family history, or family tradition, constituting the evidence offered, comes from persons having competent knowledge in respect to the subject matter of the declaration, family history or tradition. *In re Hurlburt's Estate*, 68 Vt 366, 381, 35 A 77, 35 LRA 794. At the time the testimony was offered, Ethel Jones, Arthur J. Safford and his father were all dead. Safford's statements to the deponent were made many years before this litigation arose. Evidence had already been received from which the jury could find that both Safford and his father knew that Safford and Ethel Jones were the plaintiff's putative parents and that Safford's father had paid money and obtained a release from Ethel Jones and her father. The declarations of Safford's father related to the pedigree of the plaintiff as a member of the Jones family and also the claimed pedigree of the plaintiff as a member of the Safford family.

■ The declarations of the putative father are admissible but there is a conflict in the authorities as to whether declarations as to a child's illegitimacy, by a member of the father's family, should be rejected. We think the better rule is not to exclude such testimony in a proper case. *Champion* v. *McCarthy*, 228 Ill 87, 81 NE 808, 11 LRANS, 1052, 1055-1056. We hold that part of Safford's statements to the deponent relating what Safford's father wrote and told Safford was admissible under the exception saved. *Chapman* v. *Chapman*, 2 Conn 347, 7 Am Dec 277, 278-279; *Vaughan* v. *Phebe*, 8 Tenn 5, 17 Am Dec 770, 773-775; *Cranford* v. *Blackburn*, 17 Md 49, 77 Am Dec 323, 325-326 and note at 328; *Shorten* v. *Judd*, 56 Kan 43, 42 P 337, 54 Am St Rep 587, 589; *Branch* v. *Texas Lumber Mkg. Co.*, 56 F 707, 713; *Haddock* v. *Boston & M. R.*, 3 Allen 298, 85 Mass 298, 300-301; *Eisenlord* v. *Clum*, 126 N Y 552, 27 NE 1024, 12 LRA 836, 841-842; *In re Estate of Hartman*, 157 Cal 206, 107 P 105, 36 LRANS 530 et seq; *Carfa* v. *Albright*, 39 Wash2d 697, 237 P2d 795, 31 ALR2d 983, 988-989; 5 Wigmore, 3rd Ed., pages 305, 315-316, 472; American Law Institute, Model Code of Evidence, Rule 524; *In re Hurlburt's Estate*, 68 Vt 366, 368-369, 35 A 77, 35 LRA 794. The statement

in the answer "He was working in a munitions plant and he didn't go directly home." was properly received in evidence.

It is unnecessary to decide whether the remainder of the answer should have been excluded.

■ The defendant's motion to strike and the exception covered the entire answer. It is sufficient to say here, that the motion could not be granted if any part of the testimony was admissible. Because a large portion of it was admissible the exception is not sustained. *White's Admx.* v. *C. V. Ry. Co.*, 87 Vt 330, 344, 89 A 618; *Leblanc* v. *Deslandes*, 117 Vt 248, 252, 90 A2d 802; *Latchis* v. *State Highway Board*, 120 Vt 120, 131, 134 A2d 191.

Deft's Ex. C was admitted as a certified copy of the birth certificate of Marjorie Louise Jones. It is typewritten except for the signature of the town clerk. It stated that she was born at Poultney, Vt. on May 11, 1921; that she was the legitimate daughter of Don Jones and that her mother's maiden name was Carrie Scribner. In rebuttal Pl's Ex. 12 was admitted as the original record from which Deft's Ex. C was copied. Later Pl's Ex. 12A was admitted as a photographic copy of Pl's Ex. 12. None of these exhibits show when the birth certificate was filed and the town clerk of Poultney testified that there was no way that she could determine when it was filed. She also testified that the prescribed form contained a place for adding a name from a supplemental report. Pl's Ex. 12 is not completed in that respect. The space is blank. It is plainly apparent from an examination of Pl's Ex. 12 and Pl's Ex. 12A that the first two words of the name of the child "Marjorie Louise" are in a different handwriting from that on the rest of the certificate and that fact is not questioned. While showing Pl's Ex. 12 to the jury plaintiff's counsel said: "We would like to call the jury's attention to the handwriting and signature on this Pl's Ex. 12, particularly with reference to J. J. Dervin and the balance of the handwriting on the form"

In surrebuttal the defendant offered the entire book containing Pl's Ex. 12 "for the purpose of showing its location in the book with reference to preceding and succeeding certificates and, secondly, "with reference to the fact that there

116

are in the book very, very numerous certificates in which the name of the child is in a different handwriting showing that it is customary for the certificate to be made out and the name of the child inserted in a different handwriting." The town clerk had testified previously that the book contained five years of birth certificates for the years 1919 to 1923, both inclusive. The book was excluded subject to the defendant's exception.

The defendant now argues that the plaintiff's counsel misstated the law in objecting to receiving the book in evidence. This claim is beside the point. The exception was to the ruling of the court, not to the plaintiff's objection.

■ Deft's Ex. C, Pl's Ex. 12 and Pl's Ex. 12A were all received without objection being made. The issue being tried was whether the plaintiff was the daughter and sole heir of Ethel B. Jones. As the evidence stood at the time the book was offered the location of Pl's Ex. 12 in the book and the fact that it was customary for certificates of birth to be made out and the name of the child inserted in a different handwriting were immaterial and irrelevant. They were collateral matters and were *inter alios.* They would have permitted the jury to indulge in speculation. To have one fact prove another, there must be a necessary or probable connection between the two. You cannot draw inferences from one transaction to another that is not specifically connected with it merely because the two resemble each other. They must be linked together by the chain of cause and effect in some assignable way before you can draw an inference. *Phelps, Dodge & Co.* v. *Conant & Co.,* 30 Vt 277, 284; *Walworth* v. *Barron,* 54 Vt 677, 684; *Aiken* v. *Kennison,* 58 Vt 665, 667, 5 A 757; *Jones* v. *Estate of Ellis,* 68 Vt 544, 547, 35 A 488; *Welch & Darling* v. *Ricker,* 69 Vt 239, 241, 39 A 200; *Clark* v. *Smith,* 72 Vt 138, 139, 47 A 391; *Scott* v. *Bailey,* 73 Vt 49, 51, 50 A 557; *Comstock's Admr.* v. *Jacobs,* 84 Vt 277, 284, 78 A 1017; *Dionne* v. *American Express Company,* 91 Vt 521, 525, 101 A 209; *Farnham & Sons, Inc.* v. *Wark,* 99 Vt 446, 450, 134 A 603; *State* v. *Dropobski,* 100 Vt 259, 265, 136 A 835; *Gero* v. *John Hancock Life Ins. Co.,* 111 Vt 462, 471, 18

A2d 154; *Knight* v. *Willey*, 120 Vt 256, 260, 138 A2d 596. The offered book was properly excluded.

After the verdict the defendant moved to set it aside on the grounds that the verdict was not supported by the evidence, that the evidence was insufficient to support the verdict and that there was no evidence fairly tending to support the verdict. The evidence was undisputed that Don and Carrie Jones were the parents of four children whose names and birth dates were Olive, November 21, 1915; Alleyne, December 31, 1916; Donald, May 31, 1918, and Irving, February 26, 1920. The administratrix, Ina Jones Fales, testified directly and positively, that a photograph, Deft's Ex. A, was taken in October, 1925, and depicted these four children and the plaintiff. The defendant contends that Ina Jones Fales was a credible witness; that Deft's Ex. A was real and demonstrative evidence and presented to the senses of the court and jury the comparative growth and state of maturity of the five figures depicted which could not be ignored; and that to sustain the plaintiff's claim, the jury must have ignored the physical facts depicted in Deft's Ex. A.

This Court has so often set forth the law respecting motions to set aside verdicts that it should not be necessary to repeat it. The most recent example is *O'Brien* v. *Dewey*, 120 Vt 340, 143 A2d 130. Where, as in the motion now under consideration, the question presented is one of law, the motion cannot properly be granted if there is any evidence fairly and reasonably tending to justify the verdict. The evidence must be taken in the light most favorable to the prevailing party and the effect of modifying evidence is to be excluded. The weight of the evidence and the credibility of the witnesses are for the jury to determine and all conflicts are to be resolved against the excepting party. *O'Brien* v. *Dewey*, 120 Vt 340, 346-347, and cases there cited; *Twin State Fruit Corp.* v. *Kansas*, 104 Vt 154, 157, 157 A 831, and cases there cited.

Deft's Ex. A depicted the plaintiff as considerably less in stature than the other four children, but, of course, did not, of itself, establish her age, her date of birth or her parentage. Several of the plaintiff's witnesses testified that she was small

for her age but very active; there was very convincing evidence from which the jury could determine that the plaintiff was born in 1918 and was the daughter of Ethel B. Jones. This evidence justified and sufficiently supported the verdict and the motion to set it aside was properly denied.

*The judgment is affirmed; to be certified to the probate court for the District of Fair Haven.*

Justices Hulburd and Holden concur in the result but disagree with part of what is said regarding the book of birth records.