### State of Vermont v. Milton D. Davis

[318 A.2d 664]

No. 188-72

Present: Barney, Smith, Keyser and Daley, JJ., and Billings, Supr. J.

Opinion Filed April 2, 1974

M. *Jerome Diamond,* State's Attorney, for the State.

*Robert Edward West,* Defender General, and *George E. Rice, Jr.,* Deputy Defender General, for Defendant.

**Barney, J.** This defendant was charged with operating a motor vehicle while intoxicated. The jury found him guilty. During the trial a magnetic tape recording of part of a conversation between the police chief of Wilmington and the defendant was played to the jury. The defendant rests his claims of error on this event. At hearing, a partial transcript was tendered. After a conference this Court agreed that fair disposition of the case could be made only in the presence of a full record, and disposition was stayed pending its preparation. It having now been filed, the matter is ready for decision.

The defendant came to the attention of the Wilmington police when a motorist complained about being run into by a car bearing a certain license. Two officers patrolling in a cruiser very shortly found the car involved, with the defendant at the wheel, attempting to extricate himself from a

snowbank at the edge of a parking lot. The front part was in the highway and the rear entangled in a ridge of snow left by a plow. The officers placed him under arrest, testifying that the inside of the car smelled of alcohol, that there were bottles "all over the place", that the defendant's speech was slurred, and that he had difficulty in walking and keeping his balance. The defendant was the car's only occupant. He was taken to the police station and there interviewed by the police chief. It is the tape recorded portion of that interview which the jury was allowed to hear that the defendant now claims was fatally prejudicial.

The tape was not offered for its verbal content, but to evidence the slurred manner of talking and other speech characteristics of the defendant at the time he was brought in to the police station. This was intended to be in corroboration of the testimony of the police chief; that in his opinion, the defendant's speech, among other things, demonstrated that the defendant was greatly intoxicated. Each of the four witnesses for the prosecution, the complaining motorist, the two police officers, and the police chief, testified to his observation of the defendant's physical condition. Each either described him as having the physical indications of intoxication, including alcoholic odor, unsteady walk, flushed face and slurred speech, or characterized him as drunk, or both. The defendant conceded that he had had at least five beers, but argued that his own conduct as he testified to it and the span of time over which he had had them—some three and three quarters hours —militated against a finding that he was so under the influence as to have his driving ability impaired.

The corroborating portion of the tape consisted of the first two and one half minutes of the recording, the balance being excluded because it dealt with questions and responses relating to the taking or refusal of chemical tests for blood alcohol levels. The fact that the defendant had used vulgar and profane language was made known to the jury through the testimony of the police chief before the tape was played. Needless to say, it became very evident when it actually was played.

The trial judge instructed the jury in connection with the recording of the defendant's voice that they must con-

sider whether the tape exhibit was the authentic tape, whether it was a "proper and good recording" of the conversation that took place, and then limited their use of it to the purpose "only of determining Mr. Davis's condition at the time he was being interviewed by Chief Goodnow." The tape was then played, but because of the exclusion of later portions on the tape, it was not allowed to be taken to the jury room.

■ Under these instructions, the voice recording was not, in fact, offered as evidence of statements of the accused. Rather, it was more like evidence of physical condition, just as a handwriting example is offered as identifying the writer, and not for the message conveyed by the writer. Such evidence, properly founded, is, of course, admissible, just as are the results of chemical tests and similar physical evidence. *State* v. *Ross*, 130 Vt. 235, 240, 290 A.2d 38 (1972). If that were all there were to the matter, the issue would be entirely resolved at just this point.

■ But using evidence that is in fact a statement or communication for purposes other than ones related to its content does not free us from concern for its' message. It must be apparent that an otherwise inadmissible confession of a crime cannot be received in evidence as a demonstration that the speaker was calm and apparently in full possession of his faculties when he spoke. This is merely a special case of the general rule that otherwise admissible evidence may become inadmissible where its probative value is overwhelmed by its probable improper prejudicial effect. See *State* v. *Beyor*, 129 Vt. 472, 473, 282 A.2d 819 (1971).

Thus an important concern is whether the profanity and vulgarity displayed by the defendant's recorded voice would so overwhelm the jury's sensibilities as to result in prejudice and an unfair evaluation of his case. This is a serious concern, and one which a prosecution must carefully evaluate with respect to the possibility of reversal when he makes his judgment as to whether or not he will tender the evidence before the jury.

This Court is convinced that there was no prejudice supporting a reversal in this case. There are several reasons for this conclusion. The jury was specifically cautioned by the judge to consider the taped voice only for the purpose of de-

termining Mr. Davis's condition at the time he spoke with the chief of police. Realistically, we must also acknowledge that language such as used on this tape has become an acknowledged part of acceptable modern literature. Jurors, as reasonably sophisticated citizens, must be presumed to be able to avoid having profanity divert them from their duty. Moreover, in the absence of the tape, the language used by the defendant could have properly been elicited from Chief Goodnow to whom it was addressed, as part of his description of the drunken condition he observed.

■ The defendant has raised other objections to the tape, relating to the foundation for its receipt into evidence, its authenticity and accuracy, and the presence or absence of the so-called *Miranda* warnings. He cites to us the standards recited in *United States* v. *McKeever*, 169 F.Supp. 426 (S.D.N.Y. 1958). At the outset, it must be pointed out that standards such as those referred to in the *McKeever* case would be valuable tests where the tape recording was being offered for its substantive content. That is not this case, and, in this case, the lower court correctly ruled on that issue as raised, including the questions of authenticity and accuracy.

■ With respect to the *Miranda* questions, several answers suggest themselves. The only possible admission involved is an inference that the defendant was driving a vehicle. It was a volunteered statement. The question of the defendant's operation of his vehicle at the time of the claimed offense was not in serious question at the trial. Two officers testified to it, and the defendant himself acknowledged in his own testimony from the stand that he had been driving. No error appears.

It might well be said that the evidence in the case ran so strongly against the defendant that any deficiencies in the admission of the tape might be dismissed as harmless error. We do not proceed on that ground in order to express our concern over the use of evidence that may, in some case, turn out to be so prejudicial as to require reversal.

*Judgment affirmed.*