### Ada Quazzo v. Jacqueline Quazzo and Ugo Quazzo

[386 A.2d 638]

No. 265-76

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 4, 1978

108

*Arthur J. O'Dea,* Manchester Center, for Plaintiff.

*Harry A. Black* of *Black & Plante,* White River Junction, for Defendant Jacqueline Quazzo.

**Larrow, J.** This action began below as a foreclosure, brought by the plaintiff Ada Quazzo against her sister-in-law, Jacqueline Quazzo. Jacqueline's husband, Ugo, was later joined as a party. At all times material to the issues tried below, Ugo and Jacqueline were married.

Ada's complaint sought foreclosure of a 1969 mortgage, for $100,000.00, on real estate on Popple Dungeon Road in the Town of Chester. Executed by defendant Jacqueline on January 31, 1969, it was not recorded until September 11, 1972. Execution and nonpayment of the mortgage deed and note were not challenged; by its terms the note bore no interest. The issues disputed below were raised by way of defense and counterclaim, asserting a lack of consideration, fraud in the inducement, and duress in the execution. The issues were tried before an advisory jury, with subsequent hearing before the presiding judge on issues of laches, estoppel, waiver and ratification. Findings and conclusions were filed, resulting in cancellation of the note and mortgage for lack of consideration and duress and in dismissal of the foreclosure petition. Plaintiff Ada appeals from this determination.

The findings of the advisory jury were made upon interrogatories submitted by the presiding judge. In substance, the jury found that some $100,000.00 used to renovate the Popple Dungeon Road property between 1962, its acquisition date, and 1969, was not Ada Quazzo's money; that Ugo, on behalf of Ada, made false representations to Jacqueline in connection with the 1969 note and mortgage, intending to deceive her, but that she did not believe these or rely upon them; and that Jacqueline signed the note and mortgage under duress applied by Ugo. Upon the record, the court indicated it would consider the jury decision advisory upon equitable issues, and binding as to law actions asserted in the counterclaim. It appears to have done so, without deviation from the jury findings in any particular. Such portions of the evidence as are material to the points raised upon appeal will be reviewed

in connection with the several claims of error; a full factual recital at the outset would add little to our scrutiny of those claims.

■ Appellant Ada first urges that she was prejudiced by admission of testimony concerning the income, spending habits, occupation, entertainment and general manner of life of the defendants Jacqueline and Ugo, saying that this resulted in "a matrimonial type trial" before the jury. One of the primary issues tried was lack of consideration, Jacqueline's claim being that the money in question was never borrowed from Ada. The circumstances put into evidence, in our view, were relevant to that issue. They weighed substantially against the suggestion that it was necessary to borrow any funds at all to repair and maintain the property. We countenance great latitude in the reception of circumstantial evidentiary facts. *State* v. *Ryder*, 80 Vt. 422, 426, 68 A. 652, 654 (1908). Although relevant, evidence may be excluded on the ground that its probative value is overwhelmed by its probable improper prejudicial effect. *State* v. *Davis*, 132 Vt. 290, 293, 318 A.2d 664, 665–66 (1974). Here, however, no prejudicial effect is shown. No nexus is shown between alleged misconduct of Ugo and prejudice against Ada. Even if such a possibility were indicated, its adverse effect is negated by the fact that the jury verdict was, in some aspects at least, only advisory, subject to acceptance or rejection by the presiding judge. The evidence complained of was relevant to an issue being tried; it was not of the overwhelming prejudicial character we have condemned as diverting from consideration of the true issue. See *State* v. *Beyor*, 129 Vt. 472, 473–74, 282 A.2d 819, 820 (1971).

■ Appellant's second assignment of error is based upon 12 V.S.A. § 4523(c). Referring to foreclosure actions, that subsection states that "[a]ll proceedings shall be before the presiding judge alone, and trial shall be without jury." The simple answer to this contention is that what was being tried before the advisory jury was not the foreclosure action, but the counterclaim for cancellation of the instruments. All facts relevant to the foreclosure, *i.e.* execution of the instruments and nonpayment, had been conceded. The trial was upon the

counterclaim, and was announced as such by the clerk. The plain meaning of the statute seems to us to dictate that it is not applicable to counterclaims which, independently brought, would be triable by jury as a matter of right. Moreover, holding otherwise would raise serious doubts as to the very constitutionality of the statute. It is undisputed that the counterclaim here is compulsory within the meaning of V.R.C.P. 13(a), and must be pleaded in the original action. Were we to interpret the statute as barring jury trial when so pleaded, we would be in effect abrogating, as to such claims, the right to jury trial guaranteed by our Constitution. Vt. Const. Ch. II, § 38. The interpretation of the statute contended for by the appellant is both strained and undesirable; this assignment of error is without merit. The statute relied upon is inapplicable, and the advisory jury does not seem to have been utilized in any manner not contemplated by V.R.C.P. 39.

Appellant's third claim of error deals with claimed inconsistencies between the findings as made by the court and the interrogatories answered by the jury, on the one hand, and her requests for findings on the other. Beyond a short paragraph claiming such inconsistency and a "complete disregard of . . . uncontradicted evidence," this argument is not briefed. This is insufficient briefing under V.R.A.P. 28(a)(4), and we do not search the record for error not adequately briefed or referenced. *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 517, 346 A.2d 645, 651 (1975); *In re Wright*, 131 Vt. 473, 490, 310 A.2d 1, 10 (1973). Moreover, our examination of the findings as made indicates that the substance of the requests was in fact found, except perhaps on the issue of fraud. As this issue was, in any event, determined favorably to the appellant by the jury finding that there was no reliance upon the false representations that were made, demonstrable prejudice does not appear.

The fourth asserted claim of error is that the finding below of no consideration for the note and mortgage is contrary to law. Without attacking the finding that the funds expended upon the Popple Dungeon Road property were not those of Ada Quazzo, even though they came largely from an account in her name over which Ugo had power of attorney,

appellant argues that the source of the funds is immaterial, citing cases to the effect that a consideration may be given by the promisee or by some other person. The Restatement of Contracts § 75, Illustration 7 (1932), supports this view:

A, at C's request and in exchange for $1 paid by C, promises B to give him a book. The payment is consideration for A's promise.

The fallacy in the argument, applied to the facts involved here, is that the consideration must be bargained for as the exchange for the promise. On the facts as found, the expenditures on the property and the promissory note were not interrelated, bargained for exchanges, and the note must stand as an unenforceable gratuitous promise, given long after the expenditures were made and without any further consideration. Restatement of Contracts § 75, Comment e (1932). And while, under our statute, a payee such as Ada may be a holder in due course under some circumstances, 9A V.S.A. § 3—302(2), she cannot be one here, in light of the express finding that she was not the source of the funds expended. 9A V.S.A. § 3—302(1)(a). Although an antecedent claim may be value under 9A V.S.A. § 3—303 (b), no such antecedent claim here existed. She did not take the instrument for value, and holds it subject to the defense asserted. 9A V.S.A. § 3—306; see 9A V.S.A. § 3—307(3). Lack of consideration, as found by the trial court upon credible evidence before it, was an available defense, even without analysis of the complications engendered by the husband-wife relationship. It remained available against Ada, who was not in due course. 9A V.S.A. § 3—306(c); see 9A V.S.A. § 3—408.

Appellant's fifth claim of error involves the defense of duress, found by the trial court to have been employed by Ugo to procure the execution of the note and mortgage. Under the Uniform Commercial Code, adopted generally in this jurisdiction, this defense enjoys an even higher status than does lack of consideration, because, where the effect of the duress is to make the obligation void, the defense is not cut off even by a holder in due course. 9A V.S.A. § 3—305(2)(b). We need not examine here whether the duress was of such a

nature, as we have already held that Ada was not in due course. She is subject to the defense as one which would be available in an action on a simple contract. 9A V.S.A. § 3—306(b). We need examine only appellant's claim that the finding of duress was not supported by the evidence.

The trial court found that the instruments in question were signed by Jacqueline "because of her husband's threats and conduct and misrepresentations." It concluded that the note and mortgage were executed under duress. Standing alone as they do, and without further amplification by the court on its own motion or on request of the parties, this brief finding and conclusion come close to failure to meet the test we laid down in *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 367 A.2d 1363 (1976). A clear statement to the parties, and to this Court, is required, as to what was decided and how. But the appellant assigns no error to this possible shortage, saying only that the finding of duress was not supported by the evidence. Even in the absence of findings, we examine the record to see whether a given result is supportable, upon the assumption that the trial court had the evidence in mind. *Harrigan v. Harrigan*, 135 Vt. 249, 373 A.2d 550 (1977). There was admitted conflict on the issue of duress, with Jacqueline and her father testifying to it, and Ugo denying it. The court could, and evidently did, believe Jacqueline's testimony of a threat by Ugo to drop her out the window, to smash her face, and to terminate the marriage unless she executed the note and mortgage. It could, and evidently did, believe her testimony that "after a weekend of this constant haranguing and in an effort solely to preserve our marriage for our children's sake" she "reluctantly executed the note and mortgage," even though not indebted to Ada. Indirect corroboration, in addition to direct corroboration by her father, is supplied by the total failure to account for the source of funds furnished, the unusual nature of the account from which they were drawn, and the failure to record the mortgage, or to make demand for payment until just prior to foreclosure, over three and one-half years after its execution. The challenged finding is not clearly erroneous under V.R.C.P. 52, and must be sustained. *Johnson v. Russell*, 134 Vt. 209, 211, 356 A.2d 538, 539 (1976). So

sustained, it is clearly duress, as a wrongful act compelling assent to a transaction without the volition of the actor. Restatement of Contracts § 492(a) (1932).

Appellant's last assignment of error is that the trial court failed to apply the equitable doctrine of laches. Jacqueline's failure to claim lack of consideration and duress should, she says, preclude assertion of these defenses, because it led her not to prosecute her claims, to return to Italy thinking everything was in order, and to become subject to the outcome of extensive divorce proceedings in New Jersey. We recently have reviewed the general doctrine of laches in *Turner* v. *Turner*, 131 Vt. 253, 257, 305 A.2d 592, 595 (1973). We there stated:

> The omission to assert a right for an unreasonable and unexplained lapse of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right, will always bar relief in equity. What constitutes unreasonable and inexcusable delay depends largely upon the circumstances of the particular case and is ordinarily a question of fact upon which the party asserting it has the burden of proof. *Comings* v. *Powell*, 97 Vt. 286, 293, 122 A. 591 (1923). Laches does not arise from delay alone, but from delay that works disadvantage to another. *Stone* v. *Blake*, 118 Vt. 424, 428, 110 A.2d 702 (1955); *Holt* v. *Ruleau*, 92 Vt. 74, 77, 102 A. 934 (1918).

Quite evidently with these general rules in mind, the trial court found (without dispute here) that Ada, although visiting Ugo and Jacqueline when the mortgage and note were executed, never mentioned the matter to Jacqueline until demand for payment in September, 1972, when the marriage of Ugo and Jacqueline was breaking up. Not until about that same time was the mortgage recorded. The resulting foreclosure was at the instance of Ugo. Shortly after execution of the documents, Ugo told Jacqueline and her father not to worry, because he had in his possession a signed discharge of the mortgage, and there was no need for anyone to be concerned. And, some $25,000.00 more was spent on improvements,

without further question, after the mortgage and note were executed.

We do not decide whether the claimed changes in position were, under all the circumstances, prejudicial to Ada. Delay, as *Turner* holds, must "work disadvantage" to another. We do hold that, under all the outlined circumstances, the trial court was certainly justified in concluding that Ada failed to sustain her burden, that of showing the delays to be "unreasonable and inexcusable." Whatever the real purpose of this whole transaction, and whether or not Ugo was acting as Ada's agent, a fact not found, the whole picture presented by the evidence is of a note and mortgage far outside the usual scope of such instruments, and highly uncommon, at the least. We cannot fault the trial court for its evident agreement with the defendant Jacqueline when she testified that she thought discussion would embarrass Ada, and that she "knew it was a fake thing." The trial court did equity upon the evidence before it.

*Judgment affirmed.*